UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KRISTINE GORDON-JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CLINICAL &<br>SUPPORT OPTIONS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:24-cv-40050 MRG<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF. NO. 11)**

**GUZMAN, J.**

Plaintiff Kristine Gordon-Johnson ("Gordon-Johnson") filed this six-count lawsuit against her former employer, Defendant Clinical & Support Options, Inc. ("CSO"). Gordon-Johnson brings forth claims of disability discrimination and failure to accommodate as well as retaliation for engaging in a protected activity under 42 U.S.C. §12112 (the "ADA") and under M.G.L. Chapter 151B §4 ("Chapter 151B" or "151B"). Further, she claims she is entitled to relief under the Massachusetts Civil Rights Act, M.G.L. c. 12, §111 ("MCRA"), and under a breach of contract theory.

CSO now moves to dismiss Count V (violation of the MCRA) and Count VI (breach of contract) [ECF No. 9]. Gordon-Johnson opposed CSO's partial motion to dismiss [ECF. No. 10]. For the reasons stated below, the Court **GRANTS** CSO's motion to dismiss Counts V and VI.

1

I.      BACKGROUND

   1. **Relevant Facts**[1]

Gordon-Johnson was employed by CSO from 2012 to early spring of 2023. [Compl. ¶¶ 21, 46, ECF No. 1]. Upon beginning her employment, Gordon-Johnson was required to review and sign a Harassment Policy. [Id. ¶ 22]. This barred CSO supervisors and all other employees at the company from engaging in verbal or nonverbal harassment against any other employee on the basis of "'physical or mental handicap/disability, appearance or any other status protected by state or federal law' . . . ." [Id.] Once employed, Gordon-Johnson was tasked primarily with providing mental health services to children, adults, and their families. [Id. ¶ 21]. Initially, she conducted her counseling sessions exclusively at the homes of her patients. [Id. ¶ 24]. The emergence of COVID-19 changed her working conditions. [Id. ¶ 26]. By mid-March of 2020, due to pandemic lockdowns, CSO was required to cease in-person business to contain the spread of the virus. [Id.] Starting at this time, CSO allowed its clinicians to conduct their counseling sessions virtually. [Id. ¶ 27]. Beginning in the summer of 2020, as public health restrictions relating to COVID-19 lessened, CSO began requiring its employees to appear in person and to conduct counseling sessions in their Athol, MA office or in the homes of patients. [Id. ¶ 29]. This proved to be a concern for Gordon-Johnson due to pre-existing health issues that made her particularly vulnerable to COVID-19. [Id. ¶ 32].

Prior to Gordon-Johnson's employment with CSO, in 2003, she suffered a coma due to an allergic reaction to an antibiotic. [Id. ¶ 13]. Gordon-Johnson recovered, but the coma caused

---

[1] In evaluating a motion to dismiss, the Court must "take the [] complaint's well-pleaded facts as true and indulge all reasonable inferences in [Gordon-Johnson's] favor." Wiener v. MIB Grp., Inc., 86 F.4th 76, 83 (1st Cir. 2023) (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016)).

several continuing chronic health issues including, necrosis, rheumatoid arthritis, fibromyalgia, asthma, chronic bronchitis, limited movement issues resulting in hip and knee replacements, and some minor visual impairments. [Id. ¶ 14]. As a result of Gordon-Johnson's underlying health issues, she is at heightened risk of suffering severe COVID-19 outcomes. [Id. ¶ 18]. Her medical conditions made in-person interactions with both her fellow employees and patients risky to her health. [Id. ¶ 37].

Due to these underlying health issues and the greater risk COVID-19 posed to her, when CSO began requesting that its employees return to in person services in the summer of 2020, Gordon-Johnson requested a reasonable accommodation supported by doctor's notes that she be allowed to continue to work remotely. [Id. ¶ 30]. CSO complied with this request, allowing Gordon-Johnson to work remotely through Telehealth from the summer of 2020 until March of 2022. [Id. ¶ 33]. However, after Gordon-Johnson's accommodation was granted in the summer of 2020, she saw a significant reduction in the number of referrals she received from CSO, and this continued throughout the time she worked remotely. [Id. ¶ 34]. Consequentially, this affected Gordon-Johnson's income as her earnings were directly tied to the number of patients to whom she provided counseling services. [Id. ¶ 35]. Gordon-Johnson alleges that the reduction in the number of referrals provided by CSO for Telehealth counseling was "purposeful and intended to retaliate against [her] for her request for remote accommodation." [ Id. ¶ 36]. From the summer of 2020 to March of 2022, CSO continued to allow Gordon-Johnson to conduct virtual sessions so long as she provided doctor's notes every few months, but repeatedly requested that she return to work in the office despite being aware of her health restrictions. [Id. ¶ 37]. During this time, Gordon-Johnson reports that her CSO supervisors told her they would refuse to provide her referrals if she did not return to the office to conduct her sessions in person. [Id. ¶ 38]. Gordon-

Johnson asserts that, on information and belief, CSO was not informing her patients that Telehealth sessions were an option. [Id. ¶ 38].

In March of 2022, CSO ordered Gordon-Johnson to return to the Athol office to conduct her virtual sessions from there. [Id. ¶ 39]. At the time, CSO did not required universal masking by employees, visitors, and patients at the Athol office, nor did CSO require social distancing or COVID-19 screening of patients. [Id. at 39]. Gordon-Johnson reluctantly agreed to work in-person as long as numerous accommodations could be provided. [Id. ¶ 41]. Her requested accommodations included a universal masking policy for all people who entered the office, a social distancing mandate where all employees would be required to maintain a six-foot distance from Gordon-Johnson, screening involving taking temperatures, and nearby access to bathroom facilities that were handicap accessible due to Gordon-Johnson's mobility issues. [Id.] CSO assured Gordon-Johnson that these requirements would be met, but Gordon-Johnson alleges that CSO failed to implement any of the requested accommodations. [Id. ¶¶ 42-43]. Gordon-Johnson continued to work in-person despite her health concerns because supervisors within CSO indicated that they would refuse to refer new patients to her unless she was working in-person at the Athol office. [Id. ¶ 45]. Beginning in early 2023, CSO became critical of Gordon-Johnson's job performance in several different ways. [Id. ¶ 46]. Prior to this point, Gordon-Johnson had completed her duties without incident or complaint from CSO, and she had not changed any of her work practices that had previously been accepted. [Id.] Ultimately, Gordon-Johnson was terminated in early spring of 2023. [Id.] The Complaint implies that CSO did provide some reasons for the termination, but Gordon-Johnson does not include the reasons CSO allegedly stated. [Id. ¶ 47]. Gordon-Johnson alleges her termination was pretextual and retaliation by CSO's for requesting reasonable accommodations to protect her health. [Id.] In terms of injury, Gordon-

Johnson states that CSO's actions caused her to experience a great deal of anxiety and stress and notes that her doctor opined to a "'reasonable degree of medical certainty' that [her] 'work related stress in 2023 could have contributed to [a] flare up of [her] rheumatoid arthritis.'" [Id. ¶ 49].

### 2. Procedural History

Gordon-Johnson filed a Charge of Discrimination ("Charge") against CSO with the Massachusetts Commission Against Discrimination ("MCAD") on or about April 29, 2022. [Id. ¶ 5]. Gordon-Johnson also filed dually with the Equal Employment Opportunity Commission ("EEOC"), alleging the same violations as outlined above. [Id.] The Charge was filed properly within 300 days of the discriminatory acts alleged in the Charge. [Id.]

On or about December 1, 2023, Gordon-Johnson requested permission from the MCAD and the EEOC to remove her Charge to file a private right of action in civil court. [Id. ¶ 6]. The MCAD dismissed Gordon-Johnson's Charge so that she could pursue her private right of action on or about December 15, 2023. [Id.] The EEOC issued Gordon-Johnson her Dismissal and Notice of Rights Letter on or about January 5, 2024. [Id.] Gordon-Johnson's complaint was then properly filed within 90 days of her receipt of the Dismissal and Notice of Rights Letter. [Id.] Gordon-Johnson subsequently brought this action. [Id.] Accordingly, Gordon-Johnson has exhausted her administrative remedies.

## II.    LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311 (D. Mass. 2011) (quoting Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6)). A complaint must contain sufficient factual

allegations to state a claim to relief that is "both actionable as a matter of law and 'plausible on its face.'" Id. at 311-12 (quoting Ashcroft v. Iqbal, 566 U.S. 662, 663 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation omitted).

### III. DISCUSSION

#### A. MCRA Claim

Gordon-Johnson brings two claims under Chapter 151B (Counts III and IV), as well as a claim under the MCRA (Count V). The Court finds that Count V must be dismissed for two reasons, set forth below.

#### 1. Chapter 151B Preempts Plaintiff's MCRA Claim

Chapter 151B is Massachusetts' antidiscrimination law which provides a cause of action for individuals who have been discriminated against by their employer based on a protected characteristic. See Mass. Gen. Laws ch. 151B. The relevant section of Chapter 151B states as follows:

> [A]s to acts declared unlawful by section 4 [(employment discrimination)], the administrative procedure provided in this chapter under section 5 shall, while pending, be exclusive; and the final determination on the merits shall exclude any other civil action, *based on the same grievance of the individual concerned*.

Id. (emphasis added). Section 9 establishes Chapter 151B as the exclusive remedy in employment discrimination cases and preempts all other civil actions based on the same conduct. See James v. Bos. Police Dep't, No. 19-10430-FDS, 2020 U.S. Dist. LEXIS 3529, at *10 (D. Mass. Jan. 9, 2020) ("The SJC has repeatedly held that Chapter 151B, where applicable, 'provides the exclusive

6

remedy for employment discrimination not based on preexisting tort law or constitutional protections . . . .'") (quoting Charland v. Muzi Motors, Inc., 631 N.E.2d 555, 559 (Mass. 1994)). Courts considering whether a Plaintiff's Chapter 151B claim preempts a claim under the MCRA must assess whether the two claims are based on the same facts and events. See id. at 11. "Accordingly . . . a person may not evade [151B's] procedural requirements by recasting a discrimination claim as a violation of the equal rights act." Green v. Wyman-Gordon Co., 664 N.E.2d 808, 811 (Mass. 1996). As discussed below, Gordon-Johnson's MCRA claim is based on the same events and facts as her 151B claims her MCRA claim is preempted.

In her opposition to CSO's motion to dismiss, Gordon-Johnson argues that her MCRA claim is based on proof that is "at least partially separate and distinct from the underlying discrimination claim." [ECF No. 10 at 4]. In support of her motion, Gordon-Johnson cites Cavicchi v. Raytheon Co., 16 F. Supp. 3d 4 (D. Mass. 2014), where another session of this Court denied a defendant's motion to dismiss a plaintiff's MCRA and breach of contract claims, holding that Chapter 151B did not preempt those claims because the plaintiff's MCRA claim "show[ed] a different injury with evidence other than that of employment discrimination." Id. at 10. Gordon-Johnson argues that, like Cavicchi, her MCRA claim does not necessarily depend on a finding of disability discrimination under Chapter 151B and preemption is inappropriate. [ECF No. 10 at 5]. She argues that her claim could be successful based solely on the "threats, intimidation, and coercion" directed at her by CSO. [Id.]

For various reasons, the Court finds Cavicchi distinguishable from the case at hand and Gordon-Johnson's reliance on Cavicchi is misplaced. In Cavicchi, a plaintiff sued his employer for disability discrimination and for violating his constitutional right to contract. See id., 16 F. Supp. 3d at 4. In that case, the plaintiff fell on a staircase at work, sought medical treatment, and

was subsequently cleared to return to work. Id. at 6. However, when the plaintiff returned to work the next day, his employer required him to undergo a blood test and summarily suspended him from work "'pending an investigation.'" Id. The plaintiff's employer then placed him on long term disability, an action which the plaintiff alleged was a pretense to terminate his employment without cause. Id. In his 151B claim, the plaintiff alleged the defendant: "1) treated the plaintiff as if he had a medical impairment without providing proper accommodation and 2) improperly terminated him by placing him on long-term disability." Id. In his MCRA claim the plaintiff alleged the defendant violated the act by depriving him of his constitutional right to contract. Id. The court found that the plaintiff's MCRA related to conduct other than discriminatory employment practices, such as interference with the right to contract. Id. As a result, the count found that the plaintiff's Chapter 151B claim did not preempt his MCRA claim. Id. at 9.

Unlike in Cavicci, Gordon-Johnson relies on the same evidence and conduct for her Chapter 151B disability discrimination and retaliation claims as for her MCRA claim. The Court need look no further than the words of Plaintiff's Complaint. For Count III of the Complaint, unlawful discrimination under Chapter 151B, Gordon-Johnson alleges the following facts as the basis for her claim: "CSO's discriminatory actions and failure to accommodate," "the intentional reduction in referrals resulting in a decrease in income, . . . and ultimately termination." [Compl. ¶ 79]. Under Count IV, unlawful retaliation under 151B, Gordon-Johnson identifies the retaliatory actions as: "intentional and punitive reduction in patient referrals resulting in a decrease in income . . . and ultimately [her] termination." [Id. ¶ 88]. For Count V, Gordon-Johnson's MCRA claim, the language used in the Complaint is almost identical to the preceding two claims. Gordon-Johnson alleges CSO's "threats, intimidation, and coercion" include: "refusing to accommodate [her] handicap, the intentional and punitive reduction in referrals resulting in a decrease in

8

income," and "ultimately [her] termination." [Id. ¶ 93]. Gordon-Johnson purports to use much of the same conduct in each instance, and this overlapping evidence in her Chapter 151B and MCRA claims indicates that Chapter 151B preempts her MCRA claim. Further, unlike Cavicci, Gordon-Johnson has not expressly pled a constitutional violation that might distinguish her MCRA claim from her 151B claim.[2] Compare [Compl.] with Cavicchi, 16 F. Supp. 3d at 9. "Because the factual and legal allegations in [Counts III, IV, and V] are covered by Chapter 151B, that statute provides the exclusive state-law remedy" and Count V under the MCRA must be dismissed. See James, 2020 U.S. Dist. LEXIS 3529, at *11.

### 2. Plaintiff's MCRA Claim Fails As a Matter of Law

Because Gordon-Johnson fails to allege cognizable "threats, intimidation, or coercion" for her MCRA claim, she has also failed to state a claim on which relief can be granted. The MCRA provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11. Courts have generally limited "threats, intimidation or coercion" to cases "involv[ing] a physical confrontation accompanied by a threat of harm"). Longval v. Comm'r of Corr., 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989) (quoting Bally v. Ne. Univ., 532 N.E.2d 49, 53 (Mass. 1989)). Further, "'[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA].'" Conlon v. City of Newton, No. 23-10026-FDS, 2024 U.S. Dist. LEXIS 109699, at *32 (D. Mass. June 21, 2024) (alterations in original) (quoting Longval, 535 N.E.2d at 593). In other words, "'threats, intimidation, or coercion'" must be "separately present" in addition to the "'interference with the

---

[2] Gordon-Johnson also does not plead a constitutional violation in her breach of contract claim, and, thus, Cavicchi is again distinguishable and does not prevent the Court from finding that Chapter 151B also preempts Gordon-Johnson's breach of contract claim. See discussion at Section B, *infra*.

exercise or enjoyment of secured rights.'" Id. (citations omitted).

Gordon-Johnson's Complaint conclusorily alleges only direct violations of her rights without more, and established case law indicates that some of the harms she pleads do not constitute "threats, intimidation or coercion." Count V of the complaint states, "CSO interfered by threats, intimidation or coercion, or attempted to interfere by threats, intimidation or coercion, with the exercise or enjoyment by Gordon-Johnson of rights secured by federal and state law." [Compl. ¶ 92]. The complaint itself includes no allegations of "threats, intimidation, or coercion" outside of the recast of CSO's discriminatory and retaliatory actions used previously in Counts III and IV. It does not include any allegation of physical confrontation. Further, courts have consistently held the threat of firing, or the actual loss of employment, on its own, does not constitute "threats, intimidation, or coercion." McEntee v. Beth Israel Lahey Health, Inc., 685 F. Supp. 3d 43, 52–53 (D. Mass. 2023) ("[T]he threatened or actual loss of employment is 'not coercive in the relevant sense under the MCRA.'") (quoting Nolan v. CN8, 656 F.3d 71, 77 (1st Cir. 2011)); Delmonte v. Laidlaw Envtl. Servs., Inc., 46 F. Supp. 2d 89, 93 (D. Mass. 1999) ("[A]t-will employees are not entitled to their employment, and therefore do not, when threatened with its loss, reasonably suffer coercion or intimidation."). As an at-will employee,[3] Gordon-Johnson is unable to plead her threatened loss of employment or her ultimate termination as evidence of threats, intimidation, or coercion under the MCRA. Accordingly, for this additional reason, the Court **GRANTS** Defendant's motion to dismiss with respect to Count V.

B. **Breach of Contract Claim**

Similar to her MCRA claim, Gordon-Johnson's breach of contract claim is also preempted

---

[3] CSO's Employee Handbook stipulates, "CSO adheres to the policy of employment-at-will, which permits CSO or the employee to terminate the employment relationship at any time, for any legal reason." [ECF No. 8, Ex. 2 at 7].

by 151B. "Massachusetts courts have made clear that where the legislature has already provided a comprehensive remedial statute such as M.G.L. c. 151B, the state's discrimination in employment statute, Massachusetts courts will not create a new common law action based upon the public policy expressed in that statute." Reidy v. Travelers Ins. Co., 928 F. Supp. 98, 106 (D. Mass. 1996) (citing Charland, 631 N.E.2d at 559). Further, "151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections." Charland, 631 N.E.2d at 559. Just as she did with the MCRA claim, Gordon-Johnson submits the same facts to prove her breach of contract claim as she does to prove her 151B claims. In Count VI, Gordon-Johnson alleges that she and CSO entered into contractual agreements "regarding the terms and conditions of her employment, including but not limited to the policy [] prohibiting discrimination, harassment, and retaliation based on, among other things, physical or mental handicap or disability." [Compl. ¶ 98]. As a factual basis, Gordon-Johnson literally relies on the same facts as her other claims, stating in Count VI that she "incorporates" the entirety of the preceding information in the Complaint. [Id. ¶ 97]. Additionally, she states that CSO breached its employment agreements with her by violating the antidiscrimination policy. [Id. ¶ 102]. Under this framing, Gordon-Johnson will have to use the same evidence for Count VI that she posits to prove her Count III claim, disability discrimination under 151B, and her Count IV claim, unlawful retaliation under 151B.

In her response to CSO's motion to dismiss, Gordon-Johnson tries to reframe her argument as being predicated on other grounds: "Gordon-Johnson's MCRA and breach of contract claims allege that she was retaliated against due to her petitioning activity and submission of official complaints to CSO regarding her workplace conditions. Such claims do not necessarily depend on a finding of disability discrimination under Chapter 151B . . . ." [ECF No. 10 at 5]. When deciding

a motion to dismiss, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). Although Gordon-Johnson makes the argument above in her opposition brief, [ECF No. 10], the words "petition" or "petitioning" do not appear anywhere in the complaint, nor does any mention of submitting complaints. Gordon-Johnson may not now use her opposition brief to add new facts that she failed to plead in her Complaint. As the complaint stands, Gordon-Johnson's breach of contract claim derives from seeking accommodations and disability discrimination – the same allegations that she puts forth for her Chapter 151B claims.

Despite this, Gordon-Johnson tries to argue that Massachusetts courts have frequently allowed complaints alleging violations of 151B and breach of contract claims originating from non-discrimination policies to proceed together in the same lawsuit. Specifically, she cites Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24 (Mass. 2016), where the Massachusetts Supreme Judicial Court ("SJC") reviewed a grant of summary judgment against a plaintiff who had claims of both employment discrimination in violation of 151B, and a breach of contract claim based on his termination. In the opinion, the SJC does not mention or discuss preemption, and Gordon-Johnson argues that this silence plus the court's allowance of both claims to move forward indicates that preemption should not be applied here. See id. In Bulwer, though, the plaintiff alleged a breach of contract in five ways. Id. at 690. The first was an allegation of failing to comply with the non-discrimination policy, but the remaining four allegations were breaches that had nothing to do with the non-discrimination policy. Id. Alternatively, in Gordon-Johnson's case, she has alleged no violation of CSO's contractual obligations other than "discrimination, harassment, and retaliation based on, among other things, physical or mental handicap or disability." [Compl. ¶ 98]. Since the

12

discriminatory conduct is the only source of Gordon-Johnson's breach of contract claim, it is also preempted by 151B. Accordingly, the Court **GRANTS** the defendant's motion to dismiss with respect to Count VI.

### IV.     CONCLUSION[4]

For the reasons stated above, the Court **GRANTS** the defendant's motion to dismiss with respect to Counts V and VI.

**SO ORDERED.**

Dated: February 14, 2025

                                           /s/ Margaret R. Guzman
                                           Margaret R. Guzman
                                           United States District Judge

---

[4] Because the issue of Chapter 151B preemption requires the dismissal of Counts V and VI, the Court declines to reach the merits of the Defendant's other arguments.